******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## SARGENT, SARGENT & JACOBS, LLC, AS ESCROW AGENT *v.* ALAN THOELE ET AL.
### (AC 44397)

Elgo, Alexander and Harper, Js.

*Syllabus*

The plaintiff escrow agent sought, by way of an action for interpleader, a determination of the rights to certain funds that the defendant purchaser had placed in escrow with the plaintiff as a deposit pursuant to a the purchase and sale agreement made in 2018 for certain real property owned by the defendant seller. Prior to closing, the purchaser learned that the seller had entered into an agreement (neighbor agreement) several years prior with the owners of neighboring properties, which included a provision for an easement on the seller's property in order to connect the neighbors' properties to the town's sanitary sewer system via a sewer line to be installed across the seller's property. The purchase and sale agreement did not reference the neighbor agreement or the potential sewer easement and further represented in § 16 (m) that the seller was not aware of any claims for rights of passage, easement, or other property rights to the property. Because of the neighbor agreement, the purchaser's title insurance company refused to issue a title policy. As a result thereof, the purchaser invoked § 9 (b) of the purchase and sale agreement relating to encumbrances of title and the seller's obligation to cure such claimed encumbrance or other defect in marketable title, specifically the sewer easement, and thereafter terminated the contract when the seller failed to cure such claimed encumbrance prior to closing. Subsequently, the plaintiff initiated an interpleader action to determine the defendants' rights to the deposit held in escrow by the plaintiff. Thereafter, each of the defendants filed cross claims against the other, claiming, inter alia, breach of contract and return of deposit. At trial, the seller sought to introduce a letter of intent, signed by the defendants in 2016 during the early negotiations for the sale of the property, which provided that there was an existing sewer easement that ran with the land. The purchaser objected to the introduction of the letter of intent on the basis of the parol evidence rule, arguing that the purchase and sale agreement contained an integration clause, and, therefore, any extrinsic evidence related to the contract should be excluded. The trial court overruled the purchaser's objection and admitted the letter of intent as an exhibit, recognizing that it would not be considered in connection with interpretation or application of the contract and, therefore, could not be used to impute or presume knowledge on the purchaser or alter the contract, but could be used in connection with other claims such as fraudulent inducement. Following a trial, the trial court concluded that the seller breached the purchase and sale agreement and that the purchaser was entitled to a return of its deposit and rendered judgment in favor of the purchaser, from which the seller appealed to this court. On appeal, *held*:

1. Contrary to the seller's claims that the purchaser could not invoke § 9 (b) of the purchase and sale agreement and could not argue that the failure to include the existence of the neighbor agreement in the purchase and sale agreement resulted in a material breach of that agreement because the letter of intent established the purchaser's knowledge of the neighbor agreement and potential sewer easement at the time the purchaser signed the purchase and sale agreement, § 16 (m) of the purchase and sale agreement established the purchaser's knowledge at the time that the agreement was signed and any evidence offered to alter the purchaser's knowledge was impermissible under the parol evidence rule: the trial court correctly determined that the seller relied on the letter of intent to alter the extent and manner of the parties' understanding as established in the purchase and sale agreement, as the agreement was explicit that the property was not subject to any easements or potential easements and contained no reference to the neighbor agreement or any potential easement on the property, and,

therefore, the letter of intent was offered to vary or contradict the terms of the written purchase and sale agreement and was not proper evidence regarding what the parties agreed to in 2018; moreover, the seller's claim that the court erred in determining that the purchaser had no actual knowledge of the potential sewer easement failed, as the seller relied exclusively on the letter of intent and, therefore, constituted an additional, impermissible attempt to alter the understanding between the parties established when they signed the purchase and sale agreement in 2018.

2. This court declined to review the seller's claim that the neighbor agreement was not an additional encumbrance pursuant to § 9 (b) of the purchase and sale agreement because the purchase and sale agreement required *both* the refusal of the purchaser's title insurer to issue title insurance *and* a qualified encumbrance pursuant to title standards, that claim having been inadequately briefed as the seller failed to cite any law or analysis in support of this argument that could render the court's action improper.

3. This court declined to address the seller's claim that that the trial court erred when it determined that the failure to disclose the existence of the neighbor agreement was a material breach of the purchase and sale agreement: because the trial court found that the seller had breached the purchase and sale agreement both by failing to return the deposit after the purchaser terminated the purchase and sale agreement and in his misrepresentations in the contract itself, there was no practical relief that this court could grant the seller with respect to his claim regarding a material breach, even if the court agreed with such claim, because the seller failed to challenge the other basis the trial court found a breach of the contract, and the seller's liability for breach of the purchase and sale agreement would remain intact.

Argued February 1—officially released August 2, 2022

*Procedural History*

Action for interpleader to determine the rights of the defendants to certain funds held in escrow by the plaintiff in connection with a real estate transaction, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where each defendant filed a cross claim; thereafter, the case was tried to the court, *Hon. Kenneth B. Povodator*, judge trial referee; judgment for the defendant Merwin, LLC, on the named defendant's cross claim and in part on its cross claim against the named defendant, from which the named defendant appealed to this court. *Affirmed.*

*Alan R. Spirer*, for the appellant (named defendant).

*Bruce L. Elstein*, with whom, on the brief, was *John J. Ribas*, for the appellee (defendant Merwin, LLC).

*Opinion*

ALEXANDER, J. This interpleader action arises from a dispute between the defendant purchaser, Merwin, LLC (purchaser),[1] and the defendant seller, Alan Thoele (seller), concerning a failed commercial real estate transaction.[2] The seller appeals from the judgment of the trial court rendered in favor of the purchaser on its claims for breach of contract and return of deposit. On appeal, the seller claims that the court erred in concluding that (1) the parol evidence rule precluded consideration of a letter of intent from 2016, (2) the purchaser did not have actual knowledge of a potential sewer easement on the property, (3) the potential sewer easement was an encumbrance on the property, and (4) the seller's failure to disclose the potential sewer easement was a material breach of the purchase and sale agreement.[3] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. "On January 22, 2018, [the defendants] entered into a contract for the purchase and sale of a parcel of land located at 1480 Post Road East, Westport [(property)]. . . . Shortly thereafter (and before any closing date), the [purchaser] invoked a . . . provision of the contract relating to encumbrances of title and the obligation of the seller to cure such title defects, which ultimately led to the failure to close and this litigation."

Several years before this failed real estate transaction, in or around 2011, "the seller . . . sought to obtain a modification of the zoning of the rear portion of the subject property from residential to commercial. In connection with that change, the seller had entered into an agreement with an association of owners of neighboring residential properties [(neighbor agreement)] . . . ." The neighbor agreement "included a section relating to a sewer line that would connect the neighbors' properties to the town's sanitary sewer system, via a sewer line to be installed across the seller's property" by way of "an easement for that purpose." The neighbor agreement provided that "the easement and sewer line would be triggered by final approval of a site plan or special permit for development of the property." In addition, the neighbor agreement noted that "[t]he sewer easement would not be granted and recorded until after final site plans [for development], etc., were approved by the town." After the seller obtained the requested zone change from residential to commercial, no "actual site plan application or special permit application [was] submitted in connection with any proposed development/redevelopment . . . ."[4]

"With respect to the obligations . . . relating to the sewer line and sewer easement, [the neighbor agreement] provided that '[t]he parties agree to bind them-

selves, their heirs, successors and assigns, and the said obligations [shall] run with the land, unless otherwise amended or modified by the parties. . . .' " Despite the fact that "[t]he neighbor agreement required the seller to file on the land records certain restrictions on the seller's rights with respect to development as well as certain obligations of the seller," including the agreement concerning the easement, the document that was recorded "made no mention of sewer easement issues/rights."

Several years after the seller entered into the neighbor agreement, he and the purchaser began discussing a potential sale of the property. In 2016, during the early stage of negotiations and approximately two years before the 2018 purchase and sale agreement was entered into, a letter of intent related to the sale of the property was drafted. Vincenzo Iannone, the father of the purchaser's sole member, signed the letter of intent on the purchaser's behalf as an agent of the purchaser. Under the heading "ACCESS & EGRESS," the letter of intent provided the following: "Sewer Easement for Cottage Lane is in place on the property and runs with the land for Access & Egress for [the property]." Early versions of the purchase and sale agreement,[5] as well as the 2018 purchase and sale agreement itself, did not expressly mention the existence of the easement "despite language in each contract version relating to a recitation of all known easements and claimed rights, and denying the existence of undisclosed rights and encumbrances."

Thereafter, on January 22, 2018, the purchaser and seller entered into the purchase and sale agreement. Several sections of the purchase and sale agreement are relevant to this dispute. Section 9 (b) provides in relevant part: "In the event of any objections to title as set forth in the Purchaser's written notification pursuant to the above subsection (a) or any additional encumbrance that arise after the date of Purchaser's title search which either party become aware of . . . but prior to the Closing Date, then the Seller upon notice of such Additional Encumbrance, shall have a period not to exceed thirty (30) days (the 'Cure Period'), to enable the Seller to remove the Additional Encumbrances and Seller shall diligently use its good faith efforts to remove such Additional Encumbrances. In the event the Seller is not able to remove the Additional Encumbrances prior to the Closing or prior to the termination of the Cure Period, then either Purchaser or Seller may terminate this Agreement . . . . For purposes of this Agreement, nothing shall be deemed to be an objection or encumbrance against title unless (i) the Purchaser's title insurance company shall not be willing to issue an owner's title insurance policy insuring marketable title to the Premises without exception for such objection or encumbrance [(title insurance provision)], or (ii) such objection or encumbrance is

considered an objection under the Standards of Title of the Connecticut Bar Association [(standards of title provision)] . . . ." In addition, § 16 (m) of the purchase and sale agreement, under the heading "Seller's Representations and Warranties," provides that the "Seller is not aware of any claims for rights of passage, easements or other property rights over, on or to the Premises, other than as set forth herein." The purchase and sale agreement made no reference to the neighbor agreement or the potential sewer easement.

The closing date initially was set for March 8, 2018. At some time in early 2018, after the purchase and sale agreement was signed, "the [purchaser] was made aware of the existence of [the neighbor agreement] . . . when a representative of the [purchaser] had been on the premises and had been approached by one or more neighbors who articulated anticipation of installation of a sewer line across the subject property as soon as the property were to be developed." Because of the neighbor agreement, "[t]he [purchaser's] title insurance company refused to issue a title policy" and "would not provide coverage for any litigation or costs associated with [the neighbor agreement]." On February 28, 2018, the purchaser's attorney e-mailed the seller's attorney, "invoking [the] provision in the [purchase and sale] agreement allowing the [purchaser] to give the seller [thirty] days to cure a claimed encumbrance or other defect in marketable title, specifically the easement or right to an easement given to the neighbors in 2011." Communications continued between the seller and the purchaser; however, the seller contended that "there was nothing requiring a cure, and specified his insistence on a closing, initially [on] March 8, 2018, and later April 7, 2018.

"The [purchaser] refused/failed to appear for a closing of title on any specified closing date, and, further through counsel formally declared its unwillingness to close at all, absent curative action taken by the seller. The [purchaser] claimed/treated the contract as unenforceable against the [purchaser] and/or that the seller had breached the [purchase and sale] agreement by failing to cure the title issue within the time allowed, after due demand by the [purchaser]. The [purchaser] asserted the right to terminate the contract.

"Pursuant to the terms of the [purchase and sale agreement], $325,000 had been deposited with the plaintiff as escrow agent to ensure the performance of contract obligations. It had been agreed that, upon the transfer of title, this sum should be paid over to the seller to be applied to the purchase price, but if the [purchaser] improperly and contrary to its contractual obligations failed to perform its obligations under the [purchase and sale agreement], the deposit was to be paid to the seller as liquidated damages. If the sale were not to be consummated but not as a result of any

improper refusal by the [purchaser] to close, such as based on noncompliance by the seller with a material contractual obligation resulting in the [purchaser] terminating the [purchase and sale agreement], the deposit would be returned to the [purchaser]. An interpleader action was explicitly authorized in the event of an impasse as to disposition of the deposit." (Footnote omitted.)

Each of the defendants then filed cross claims against the other. The seller claimed that the purchaser had (1) breached the contract when it failed to close on the property and again when it failed to instruct the escrow agent to release the deposit as liquidated damages and (2) breached the covenant of good faith and fair dealing. In its amended cross claim, the purchaser contended: (1) it was entitled to return of its deposit because it made proper demand and terminated the transaction under § 9 (b) of the purchase and sale agreement; (2) the seller had breached the contract by failing to disclose the neighbor agreement and the potential sewer easement contained therein, entitling the purchaser to return of the deposit plus damages; and (3) the seller committed fraud in the inducement by failing to disclose the existence of the neighbor agreement. The case was tried to the court, *Hon. Kenneth B. Povodator*, judge trial referee, on October 2, 3, and 4, 2019.

Following the trial, the defendants submitted simultaneous posttrial briefs. The seller first argued that the purchaser could not invoke § 9 (b) because "the requirements [of that section] are predicated on the [purchaser's] discovery of an additional encumbrance after the [purchaser] has completed and accepted [the purchaser's] title search" and the purchaser "did not 'become aware' of the sewer easement in February, 2018." The seller also claimed that "[the purchaser] knew about and acknowledged the sewer easement [from] the [letter of intent] signed and submitted [by the purchaser] in August, 2016." The seller further argued that the sewer easement was not an encumbrance because it did not diminish the value of the property or affect the marketability of title. The seller contended that the omission was not a material breach because the neighbor agreement "had already been acknowledged by [the purchaser] in the [letter of intent], would not impact the development of the property, would not cost [the purchaser] any money and might never need to be granted." Finally, the seller advanced that he was entitled to retain the deposit because the purchaser was not permitted to rescind the purchase and sale agreement.

In its posttrial brief, the purchaser claimed that it was entitled to a return of the deposit based on its proper request for cure under § 9 (b) and the seller's subsequent refusal to cure the encumbrance on the property as evinced by the neighbor agreement. In addition, the purchaser argued that the seller first breached

the purchase and sale agreement by failing to disclose the existence of the neighbor agreement and then by failing to return the deposit. The purchaser also claimed fraud in the inducement because the seller failed to disclose the neighbor agreement.

On November 13, 2020, the court issued a memorandum of decision and rendered judgment in favor of the purchaser on its breach of contract claim and its return of deposit claim. The court rendered judgment in favor of the seller on the purchaser's fraud in the inducement claim. Finally, the court rendered judgment in favor of the purchaser on both of the seller's claims.

On appeal, the seller claims that the court erred in determining that (1) the parol evidence rule precluded consideration of the 2016 letter of intent in addressing the purchaser's knowledge of the neighbor agreement, (2) the purchaser was not aware of the continued existence of the neighbor agreement until a neighbor spoke to one of its representatives about it, (3) the neighbor agreement created an additional encumbrance on the property under § 9 (b) of the purchase and sale agreement, and (4) the seller's failure to disclose the neighbor agreement in the purchase and sale agreement constituted a material breach of the purchase and sale agreement. We disagree with each of these claims.

I

We first consider the seller's claims that the court improperly determined that the parol evidence rule precluded consideration of the letter of intent in addressing the purchaser's knowledge of the neighbor agreement and that the purchaser did not have actual knowledge of the potential sewer easement until a neighbor spoke to one of the purchaser's representatives about it. We address these claims together because whether the letter of intent can be used to establish the purchaser's knowledge is dispositive of the seller's claim that the court erred in determining that the purchaser had no knowledge of the potential sewer easement. The seller argues that the letter of intent the purchaser's agent signed in 2016 established that the purchaser had actual knowledge of the neighbor agreement and potential sewer easement at the time it signed the purchase and sale agreement in 2018 and, therefore, could not invoke § 9 (b) and could not argue that the failure to include the existence of the neighbor agreement resulted in a material breach of the purchase and sale agreement. We disagree with both of these claims.

The following additional facts and procedural history are relevant to our resolution of these claims. At trial, the purchaser's attorney objected to the use of the 2016 letter of intent on the basis of the parol evidence rule, arguing that the purchase and sale agreement "has an integration clause . . . and any extrinsic evidence related to the contract should be excluded . . . ." The

purchaser's attorney also pointed to § 16 (m) of the purchase and sale agreement, which disclaims any knowledge of easements or similar rights, to support his position that using the letter of intent would "[run] . . . afoul of the parol evidence rule." In response, the seller's attorney asserted that "[w]e're not trying to bury the terms of the contract or offer evidence to interpret the terms of the contract. . . . [T]he purpose of this letter of intent is to show that the [purchaser] had notice of the sewer easement . . . ." The court admitted the letter into evidence, noting that "[t]he parol evidence rule is varying the terms of the contract. You have non-contract claims and you have claims that . . . may depend upon determination of materiality. So I'm going to overrule the objection. It's not going to come in to vary the terms of the [purchase and sale] agreement."

Later during the trial, the seller testified that Franco Iannone, the purchaser's sole member, and Vincenzo Iannone visited the property one or two months after the letter of intent was signed. The seller testified that Franco Iannone asked him where the sewer connection would run and that he showed Franco Iannone the location.[6] In his posttrial brief, the seller argued that because the 2016 letter of intent mentioned the potential sewer easement, the purchaser was aware of the potential easement, could not invoke § 9 (b), and was not entitled to request cure.

In its posttrial brief, the purchaser maintained that the letter of intent and the testimony about the meeting could not be used to contradict the terms of the integrated agreement because such evidence "contradict[ed] the unambiguous terms of the [purchase and sale] agreement," violating the parol evidence rule.

In its memorandum of decision, the court first discussed the issue of the purchaser's knowledge of the neighbor agreement and potential sewer easement and then addressed the parol evidence rule. Specifically, the court determined that "[t]he [letter of intent] was signed on behalf of the [purchaser] by an individual allegedly with limited facility with English, and the [purchaser's] principal did not recall reading the [letter of intent] after (or implicitly, before) it was signed. An authorized signature would be sufficient to impute knowledge to the entity, but would not necessarily establish actual knowledge in 2018 in the sense of a then-present awareness. The conduct of the [purchaser], after speaking to the neighbor(s) about the claimed right to a sewer across the subject property, is indicative of a lack of actual functional knowledge as of early 2018—there was a diligent effort to obtain information about such rights, including efforts to obtain a copy of the neighbor agreement that embodied/created whatever rights the neighbors might have. Whether the [purchaser's] principal never knew, or knew in 2016 and forgot by 2018, the court is satisfied

that the [purchaser] did not have actual knowledge/ recollection of the existence or claimed existence of sewer rights as of the signing of the contract underlying this dispute.

"More important, the state of knowledge of the [purchaser's] principal is irrelevant for purposes of interpretation of the contract of sale and the seller's representations and warranties contained therein. This necessarily requires the court to address the parol evidence rule and its applicability. The [purchaser] objected to admission of the [letter of intent] as an exhibit based on the parol evidence rule. The court allowed the document as an exhibit, recognizing that it would not be considered in connection with interpretation or application of the contract, but would/could be used in connection with other claims, with specific reference to the claim of fraudulent inducement. The contract addresses in a number of ways . . . the negation of nonidentified easements, claimed rights of access or passage, and anything that might constitute a cloud on title, as well as a right to insist on curative action being taken in appropriate circumstances. Any imputed or presumed knowledge on the part of the [purchaser] to the contrary, based on the [letter of intent] cannot be used to alter the contract." (Footnote omitted.)

Addressing the seller's testimony about meeting with Franco Iannone to discuss the potential sewer easement, the court noted that, "[a]ssuming that such a discussion did occur, it does not alter the parol nature of any evidence contradicting the statements in the contract relating to the affirmative identification of all known easements and similar rights and the negation of any such rights not specifically identified in the document including exhibits/schedules. The prompt efforts of the [purchaser] to seek documentation relating to any such easement rights after the 2018 encounter with neighbors tends to confirm that [Franco] Iannone had no then-current knowledge or recollection relating to the existence of easement rights. Knowledge of the existence of rights in 2016 does not necessarily mean that the rights continued into 2018, particularly given the affirmative statements in the contract executed in 2018 that such rights did not exist—the rights could have lapsed/expired, curative action could have been taken, etc."

On appeal, the seller argues that the letter of intent is not being used to vary the terms of the purchase and sale agreement but, rather, represents the purchaser's "actual knowledge" of the neighbor agreement, precluding the purchaser from taking advantage of § 9 (b). In response, the purchaser points to § 16 (m) of the purchase and sale agreement, which provides that the "Seller is not aware of any claims for rights of passage, easements or other property rights over, on or to the Premises," and argues that this provision establishes its

knowledge at the time the purchase and sale agreement was signed, meaning that any evidence offered to alter its knowledge is impermissible under the parol evidence rule. We agree with the purchaser.

"Ordinarily, [o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the [seller's] claim involves a question of law to which we afford plenary review." (Internal quotation marks omitted.) *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 77 Conn. App. 462, 466, 823 A.2d 438 (2003); see also *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 728, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021).

"The parol evidence rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversation, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . . The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. . . .

"Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud." (Citation omitted; internal quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, supra, 207 Conn. App. 728–29.

At the outset, we note that the seller does not argue that the purchase and sale agreement is not integrated but, instead, contends that the letter of intent was not offered to vary the terms of the purchase and sale agreement. We conclude that the court correctly determined that the seller relied on the letter of intent in order

to alter the purchase and sale agreement between the defendants. Although the purchaser may have been aware of the potential sewer easement at the time that its agent signed the letter of intent in mid-2016, the 2018 purchase and sale agreement that the purchaser signed made clear that the property was not subject to any easements or potential easements. The purchase and sale agreement signed in 2018 contained no reference to any potential easement on the property. Therefore, any attempt to use previous exchanges regarding the neighbor agreement is an attempt to alter the " 'extent and manner of [the parties'] understanding' " as established by the 2018 purchase and sale agreement. Id., 728. Consequently, the court correctly concluded that the 2016 letter of intent was not proper evidence regarding what the parties agreed to in 2018. Additionally, the seller's arguments on appeal in support of his claim that the court erred in determining that the purchaser had no actual knowledge of the potential sewer easement rely exclusively on the letter of intent and, therefore, constitute an additional, impermissible attempt to alter the understanding between the parties established when they signed the purchase and sale agreement in 2018. Accordingly, this claim also fails.

## II

We next address the seller's claim that the court erred in concluding that the neighbor agreement was an additional encumbrance pursuant to § 9 (b) of the purchase and sale agreement, therefore entitling the purchaser to request that the seller cure the issue and, later, to terminate the purchase and sale agreement when the seller failed to cure the issue. In support of this claim, the seller argues, inter alia, that the trial court incorrectly determined that § 9 (b) required that *either* the purchaser's title insurer refuse to issue title insurance because of the objection to title *or* that the title objection qualifies as an encumbrance pursuant to the Standards of Title of the Connecticut Bar Association. The seller contends that the purchase and sale agreement required *both* the refusal of title insurance *and* a qualified encumbrance pursuant to title standards. We decline to review this claim, however, as it is inadequately briefed.[7]

The following procedural history is relevant to our resolution of this issue. In its memorandum of decision, the court assumed that the contractual provision at issue was ambiguous and then analyzed whether the seller's proposed interpretation—that the clause is conjunctive—would lead to "[un]reasonable or bizarre results." The court then determined that "[t]he seller has not made the case that treatment of 'or' as disjunctive leads to irrational or bizarre results, or that it somehow frustrates the intent of the drafting parties." Thus, the court read § 9 (b) as requiring curative action if "*either* the claimed problem is unacceptable to the title

insurance company for coverage (it insists on an exception to coverage) *or* the claimed problem satisfies the definition set forth in the standards of title." (Emphasis added.) The court then determined that because the purchaser's title insurer "had indicated that it was 'not . . . willing to issue an owner's title insurance policy' " due to the existence of the neighbor agreement "the prospective purchaser was within its rights to invoke the cure provisions of the contract."

On appeal, the seller argues that "[t]he trial court has misread the provision" because, in order to request cure, the purchaser's objection must have satisfied *both* the title insurance provision *and* the standards of title provision. The seller argues that "the import of [§] 9 (b) is that a seller is required to cure/remove an objection to title that affects marketability" and "a seller is not required to cure/remove an objection to title which will not affect marketability." The seller, however, did not provide any law or analysis in support of this argument.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized." (Citations omitted; internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021).

We conclude that the seller's claim that the provisions of § 9 (b) should be read conjunctively is inadequately briefed. The seller provides no discussion or analysis of the court's determination as to why the provisions should be read in the disjunctive. He fails to point to any evidence supporting his position. Further, he provides no citation to legal authority supporting his position. Finally, he provides no meaningful analysis of the claim. See id., 805 ("[a]lthough the number of pages devoted to an argument in a brief is not necessarily determinative, relative sparsity weighs in favor of concluding that the argument has been inadequately briefed" (internal quotation marks omitted)). Accordingly, we decline to review this claim.

### III

Finally, we address the seller's claim that the court erred when it determined that the failure to disclose

the existence of the neighbor agreement was a material breach. We need not consider the merits of this claim because the court also found that the seller had breached the purchase and sale agreement by failing to return the deposit after the purchaser terminated the purchase and sale agreement. Because the seller only claims that one of those determinations was in error, we cannot provide him with any practical relief.

At trial, the purchaser advanced two bases for its breach of contract claim. First, it argued that the seller breached the purchase and sale agreement when it failed to disclose the existence of the neighbor agreement. Second, it argued that the seller breached the purchase and sale agreement when it failed to return the deposit once the purchaser learned of the neighbor agreement and requested cure, a request which the seller refused to oblige. "The court . . . concluded that there was a breach of contract both in the sense of a failure to return the deposit after termination and in the sense of misrepresentations made in the contract itself." On appeal, the seller *only* contests the court's determination that its failure to disclose the neighbor agreement constituted a breach of contract. The seller has not challenged the court's determination that failing to return the deposit also constituted a breach of the purchase and sale agreement. Because the other basis for the claim of breach of contract is uncontested, even if we were to agree with the seller that its failure to disclose was not material, the seller's liability for breach of the purchase and sale agreement would remain intact. Therefore, we cannot provide the seller with any practical relief. See *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 517, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009) ("even if we were to conclude that the court's decision as to one of the challenged counts was improper, [the appellant] could be afforded no practical relief because its liability would rest on the unchallenged finding"). Therefore, we need not address this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Franco Iannone is the sole member of the purchaser and will be referred to by name where appropriate.

[2] The plaintiff, Sargent, Sargent & Jacobs, LLC, as the escrow agent, initiated this action against the purchaser and the seller by way of an interpleader complaint requesting "[a]n interlocutory judgment requiring the defendants to interplead together concerning their claims to the funds now in the hands of the plaintiff" and noting that it "has and claims no interest in the funds and is willing to pay the same over to such person as is lawfully entitled to receive the same . . . ." The plaintiff is not a party to this appeal. For clarity, we refer to the two defendants as seller and purchaser throughout this opinion.

[3] For the sake of clarity and ease of discussion, we address the seller's arguments in an order different from the way in which they were briefed.

[4] The seller submitted "a conceptual—not actual—development plan . . . in conjunction with his applications to the town" for the zone change.

[5] The contract at issue in this case was the third version of the purchase and sale agreement between the parties. The first two agreements were

terminated largely due to environmental concerns.

[6] When asked about such a meeting at trial, although Franco Iannone remembered various meetings at the property with the seller he could not recall any discussion of the potential sewer easement or its placement.

[7] The seller also argues that, because the purchaser became aware of the neighbor agreement when its agent signed the letter of intent in 2016, the purchaser cannot take advantage of § 9 (b). The seller points to the following language in § 9 (b) to support this position: "[i]n the event of any . . . additional encumbrance that *arise*[*s*] *after* the date of Purchaser's title search which either party *became aware* of . . . ." (Emphasis added.) On the basis of this provision, the seller argues that "[the purchaser] did not 'become aware' of the sewer easement in February, 2018." As discussed in part I of this opinion, however, the letter of intent cannot be used to alter the understanding contained in the purchase and sale agreement that there were no easements or potential easements on the property. The court determined that the seller failed to prove that the purchaser was aware of the neighbor agreement and the potential easement at the time it entered the purchase and sale agreement. We conclude that the court correctly determined that the purchaser was entitled to invoke § 9 (b).

Further, the seller argues in the alternative that the neighbor agreement did not affect marketability of title or diminish the value of the property and, therefore, the purchaser's objection did not satisfy the standards of title provision of § 9 (b). In light of our conclusion that we cannot review the seller's claim that the provisions in § 9 (b) should be read in the conjunctive due to the seller's inadequate briefing, we need not consider whether the standards of title provision was satisfied.

--------------------------------